HARVEY B. ANDREWS ET AL., APPELLANTS, V. LILLIAN IRRIGATION. DISTRICT, APPELLEE.*

FILED NOVEMBER 19, 1902. No. 11,548.

Commissioner's opinion, Department No. 3.

Equity: NON-IRRIGABLE LANDS: IRRIGATION DISTRICT. Equity will not interpose to separate non-irrigable lands from an irrigation district, in the absence of a showing that the plaintiffs have sought to avail themselves of the statutory procedure providing for effecting such separation.

* Rehearing allowed. See opinion, p. 461, *post*.

APPEAL from the district court for Custer county. Action in equity to cancel certain taxes imposed by defendant and to enjoin the imposition of further taxes. Heard below before SULLIVAN, J. Decree for defendant. Plaintiffs appeal. *Affirmed.*

*John S. Kirkpatrick* and *George E. Hager,* for appellants.

*Alpha Morgan* and *Charles L. Gutterson, contra.*

AMES, C.

Section 1 of article 3 of chapter 93a of the Compiled Statutes,* enacts that "whenever a majority of the resident freeholders owning lands in any district susceptible to one mode of irrigation from a common source and by the same system of works, desire to provide for the irrigation of the same, they may propose the organization of an irrigation district under the provisions of this act." By section 2 it is provided that a majority of such freeholders may present a petition to the county board for the formation of such a district, and that the board may thereupon make such changes in the proposed boundaries of the district as they may find proper, and establish and define its boundaries, but that they shall not include therein any land which will not, in their judgment, be benefited by the irrigation system proposed to be included in such district. The petition in this action alleges the creation of the defendant as an irrigation district, and that it includes the lands of the plaintiffs, but it complains that such lands are not only not susceptible of irrigation by or from the system established therein, but that they are low-lying swamp lands, requiring to be drained, and that they would be positively injured by the distribution of water upon them from the defendant's system of ditches. But they further assert that it would not be for the interest of the

---

* Cobbey's Annotated Statutes. sec. 6822.

district, or of the majority of its freeholders or voters, or of the holders of bonds hitherto issued and sold by the district, to have the plaintiffs' lands excluded from the district, and that none of such persons will or would, if requested, consent to their being so excluded, and that the plaintiffs are therefore subjected to burdensome and oppressive taxation without benefit to them, and are remediless except for the equitable intervention of the court. It is therefore prayed that taxes hitherto levied by the district upon their lands be adjudged a cloud upon their titles, and canceled and annulled, and that the future levy of such taxes be perpetually enjoined, and that said lands and every of them, be by the court adjudged to be no part of such district, and be perpetually excluded therefrom, and that the plaintiffs have such further and other relief as may be just and equitable. To this petition a general demurrer was sustained, and the plaintiffs not desiring to plead further, a judgment of dismissal and for costs was rendered, which the plaintiffs seek to have reviewed and reversed by appeal.

We think that the judgment of the district court is right. Sections 46 to 53* of this act provide a procedure by which non-irrigable lands may, upon a petition by their owners to the district board, be withdrawn or excluded from the district. It is not alleged that this remedy has been applied for, but the plaintiffs complain apparently by way of excuse for not having made such an application, that on account of the presumed dispositions and interests of the freeholders and bondholders, such an attempt would probably be futile. But this is a conjecture merely, the accuracy of which can be tested only by experiment. If the effort should be made and should fail, some highly interesting questions would arise as to the constitutional right or legislative power of taxing private property for the construction and maintenance of public improvements by which it is not only not benefited, but is demonstrably injured. We do not think that the rule that equity will

---

* Cobbey's Annotated Statutes, secs. 6868-6875.

interpose, notwithstanding there is a remedy at law, in the cases in which the latter remedy is less comprehensive, adequate and complete than the former, is applicable to cases in which a special statutory procedure is provided for attaining the desired end. In the case at bar we think that if the equitable powers of the court can be invoked at all,—about which we express no opinion,—it can not be done until after the plaintiffs have demanded from the district board the right to have their lands set apart from the district, and their application has been defeated by refusal or neglect.

It is recommended that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.

The following opinion on rehearing was filed November 5, 1903. *Judgment below reversed:*

1. **Irrigation District: BOUNDARIES: ORDER OF COUNTY BOARD: COL-LATERAL PROCEEDING.** An order of the county board establishing and defining the boundaries of an irrigation district in pursuance of the provisions of section 2, article 3, chapter 93a, Compiled Statutes (Annotated Statutes, sec. 6823), is conclusive, at least in a collateral proceeding, on the question whether the lands included therein will be benefited by irrigation by the system therein contemplated; *aliter*, on the question whether any of such lands can not, from some natural cause, be irrigated thereby.

2. **Detachment of Land from Irrigation District.** After an irrigation district has been duly organized, the statutory procedure prescribed in said chapter for detaching lands, other than those which can not from some natural cause be irrigated, is exclusive.

3. **Allegation in Petition: DEMURRER: CONSTRUCTION.** An allegation in a petition to the effect that lands are low, wet and swampy, totally unfit for irrigation, and require drainage of the water

naturally standing thereon before the same can be farmed, is, as against a general demurrer, equivalent to an allegation that such lands, from some natural cause, can not be irrigated.

4. **Petition.** Petition examined, and *held* to state a cause of action.

5. **Irrigation District:** LAND: PURCHASE: CONDEMNATION. The board of directors of an irrigation district, may acquire by purchase or condemnation all lands necessary for the construction, use, maintenance, repair and improvement of its canals.

HOLCOMB, J.

This case is before us on rehearing. The former opinion is reported *ante,* page 458.

It appears from the petition that the defendant is an irrigation district, organized and acting under the provisions of article 3, chapter 93a, Compiled Statutes (Annotated Statutes, secs. 6822-6886), relating to irrigation and that the plaintiffs are the owners of certain lands lying within its boundaries; that said lands, "are low, wet, swampy lands, lying near the river and totally unfit for irrigation, and each and all of said tracts, must have the water naturally standing thereon drained off by means of ditches before the same can be farmed, and said lands and each and every part thereof are so situated that it will be a great and irreparable damage and injury to the same, and to the several owners thereof, for the defendant to run water over across and upon the same or any part thereof, which defendant threatens, intends and is about to do, and will do unless restrained by process of this court"; that the defendant has caused taxes to be levied against the lands for irrigation purposes, which now stand of record as an apparent lien against the same, and as a cloud on the plaintiffs' title thereto; "that a large majority of the electors of defendant irrigation district are opposed to letting the above described lands or any portion thereof to be set out of said irrigation district defendant, and would and will, if permitted so to do, vote against allowing said lands or any part thereof,being set out of said district and a large amount of the bonds of said district defendant, have been issued and some of them have been

sold and are in the hands of innocent purchasers; that each and all of the holders of said bonds are opposed to allowing or permitting said lands or any part thereof to be set out of said district defendant, and none of the holders of said bonds will consent that said lands may be set out of said district and plaintiffs have no adequate remedy at law." The relief asked is that the lands be detached from said district; that the defendant be enjoined from levying taxes against them for irrigation purposes, from collecting those already levied, and from flowing water over said land. A demurrer to the petition was sustained and the suit dismissed. The plaintiffs appeal.

By the former opinion the plaintiffs were denied any relief on the ground that sections 46 to 53 of article 3, chapter 93a, Compiled Statutes, 1903 (Annotated Statutes, secs. 6868, 6875), entitled "Water Rights and Irrigation," provide an exclusive method of procedure by which non-irrigable lands may be withdrawn or excluded from a district; that in no event, until a petition has been presented to an irrigation district board and acted upon in the manner provided by the act referred to, can parties complaining be heard in a court of equity for the purpose of having segregated from such irrigation district lands alleged to be non-irrigable. The conclusion we there reached was to the effect that all lands included within the boundaries of the irrigation district, when once established, could be excluded or taken therefrom only by petition to the district board, after a vote upon the question, and with the consent of bond owners, where district irrigation bonds had been issued and disposed of. A further consideration of the question leads to the conclusion that as to non-irrigable lands lying within the boundaries of an irrigation district, the provisions of the sections referred to in the former opinion can have no application. Section 2, article 3, chapter 93a, Compiled Statutes (Annotated Statutes, sec. 6823), provides for the filing of a petition for the organization of an irrigation district with the county board; for notice of a hearing thereon and for such

hearing; for changes in the proposed boundaries; that no land shall be included therein that would not, in the opinion of the board, be benefited by irrigation therefrom; that upon a hearing of such petition, the board shall establish and define the boundaries of the proposed district; for notice of an election to determine whether such district shall be organized. Section 3 provides for the holding of such election, the canvass of the votes and the organization of the district by the county board, in case a majority of the votes cast are for its organization. Sections 4 to 8, inclusive, provide generally for the election of an assessor, treasurer and board of directors for such districts, and section 9 defines the general powers and duties of such officers. Section 13 authorizes the issuance of bonds by an irrigation district, and section 15 provides that such bonds and the interest thereon, shall be paid by revenue derived from an annual assessment on the real property of the district, which shall be and remain liable to be assessed for the payment of such bonds.

We now come to the procedure prescribed by said chapter for detaching lands from an organized irrigation district. Section 47 (Annotated Statutes, sec. 6869) provides that the owner or owners in fee of one or more tracts of land, constituting a portion of any such district, may file with the board of directors of the district a petition, praying that such tracts may be excluded from the district. Section 48 provides for the publication of notice of the filing of such petition, and section 49 for the hearing thereon. Sections 50 and 51 are as follows:

"50. The board of directors, if they deem it not for the best interests of the district that the lands mentioned, in the petition, or some portion thereof, should be excluded from said district, shall order that said petition be denied; but if they deem it for the best interest of the district that the lands mentioned, in the petition, or some portion thereof, be excluded from the district, and if no person interested in the district show cause in writing why the said lands, or some portion thereof should not be excluded

from the district or, if having shown cause, withdraws the same, and also, if there is* no outstanding bonds of the district, then the board may order the lands mentioned in the petition, or some defined portion thereof, be excluded from the district."

"51. If there be outstanding bonds of the district, then the board may adopt a resolution to the effect that the board deems it to the best interest of the district that the lands mentioned in the petition, or some portion thereof, should be excluded from the district. The resolution shall describe such lands so that the boundaries thereof can be readily traced. The holder[s] of such outstanding bonds may give their assent in writing to the effect that they severally consent that the board may make an order· by which the lands mentioned in the resolution may be excluded from the district. The assent may be acknowledged by the several holders of such bonds in the same manner and form as is required in case of a conveyance of land, and the acknowledgment shall have the same force and effect as evidence as an acknowledgment of such conveyance. The assent must be filed with the board and must be recorded in the minutes of the board; and said minutes, or a certified copy thereof, shall be admissible in evidence with the same effect as the said assent; but if such assent be not filed, the board shall deny and dismiss said petition."

Subsequent sections provide for the procedure in case the assent of the holders of the bonds is given and filed as provided in the section last above.

From an examination of those portions of the act referred to, we think it is clear that the question whether a particular tract of land will be benefited by a proposed system of irrigation, is exclusively for the county board establishing and defining the boundaries of such district in accordance with the provisions of section 2, involving a finding that the lands included within such boundaries will be benefited by the proposed system, and is conclusive on that point upon the owners of such lands, at least in a

* So reads the statute.—W. F. B.

36

collateral proceeding. Whether such order is judicial or merely administrative, is a question, the determination of which is not necessary to a decision in this case and should not be decided until squarely presented and fully argued. But whether judicial or administrative, after such order is made, all the debts and obligations of the district are incurred on the faith and credit of the district as thus organized, and thereafter, whether any portion of such lands shall be detached from the district, is made to depend, by the express provisions of the sections quoted, not upon the whim of the owner, nor upon whether they are benefited by irrigation, but, very properly, on whether it is for the best interest of the district, and upon the consent of those holding the obligations which are a charge upon its revenues. From the very nature of the remedy afforded by the act for detaching lands from an irrigation district, it is exclusive, because the courts can not control the discretion given the directors of the district by section 50, nor ignore the provisions of section 51, which make the consent of the holders of the bonds of the district a condition precedent to detaching such lands. It is clear, then, that the plaintiffs' petition fails to state a cause of action, unless the allegations bring their lands within the class upon which we shall now proceed to consider.

Section 49 of said chapter provides that in no case shall land, which from some natural cause can not be irrigated, be held in any irrigation district, or taxed for irrigation purposes. Thus it will be seen that the act under consideration clearly distinguishes between land which would not be benefited by irrigation, and such as from some natural cause is non-irrigable. As already shown, whether a particular tract of land will be benefited by a proposed system of irrigation, is a question which the legislature has confided to the county board. Whether a particular tract of land from some natural cause can not be irrigated, is a question which goes to the jurisdiction of the county board over such tract and may be raised at any time in a proper case, because section 49, *supra*, expressly denies the juris-

diction of the county board to include such land in an irrigation district, or to tax it for irrigation purposes. Should such land be included within the boundaries of an irrigation district, or taxed for irrigation purposes, it would be in violation of a plain provision of the statute. That being true, whether it should be held in such district, or taxed for irrigation purposes, does not depend on what is for the best interest of the district, nor on the consent of those holding bonds issued by the district, because the statute is mandatory that it should not be thus held and taxed. The statutory proceedings, therefore, to have lands detached, which make the question whether they shall be detached, or not, dependent on what is for the best interest of the district, and upon the consent of the holders of the district bonds, do not apply. It necessarily follows that the former opinion, to the extent it holds that the statutory remedy for detaching lands from an irrigation district applies to non-irrigable lands, is erroneous, because, from the very nature of the remedy, it applies only to such as may be held in the district and taxed for irrigation purposes against the will of the owner.

The petition of the plaintiffs in the case at bar, was demurred to on the ground that it failed to state facts sufficient to show that the plaintiffs were entitled to the relief prayed for. By the demurrer it was admitted that the lands sought to be detached are low, wet, swampy lands, totally unfit for irrigation and which require drainage of the water naturally standing thereon before they can be made fit or used for agricultural purposes. This, we think, for the purposes of the demurrer, is equivalent to alleging that the lands were non-irrigable; that from natural causes, they could not be irrigated by the proposed system of irrigation. Evidently the legislature meant to exclude from the irrigation district, and from taxation in support thereof, lands that were not susceptible of irrigation. If, because of the natural conformation of the surface, lands within the irrigation district lay so high as to render it impossible to conduct water thereon by means of irriga-

tion ditches for the irrigation of the land, it would hardly be contended that such lands were not, within the meaning of the section of the statute to which attention has been directed, land "which can not from any natural cause be irrigated thereby," and therefore could not lawfully be held in such district, and taxed to support the system. Nor do we think it can be said of the petition in the case at bar, when the allegations are fairly construed in ruling upon its sufficiency when tested by a general demurrer, that the lands described therein are other than non-irrigable lands, within the meaning of the proviso in said section 49 of the irrigation act.

The plaintiffs also contend that they are entitled to an injunction restraining the defendant from flowing water over their lands. We do not think the allegations of the petition are sufficient to entitle them to such relief. Section 10 of said chapter provides that the board of directors of an irrigation district may acquire by purchase or condemnation all lands and other property necessary for the construction, use, maintenance, repair and improvement of its canals, etc. The allegations of the petition are merely to the effect that the defendant district intends to flow water over or across the lands described. There is no allegation that it intends to do so unlawfully or wrongfully; for aught that appears, it intends to do so lawfully, in pursuance of the statutory provision just noticed. This court can not indulge the presumption that one of the agencies of the state, organized for the purpose of discharging a governmental function, intends to commit a trespass.

We therefore, from what has been said, reach the conclusion that the petition states a cause of action, and that the former judgment of affirmance should be vacated and the judgment of the district court reversed and the cause remanded for further proceedings, which is accordingly done.

REVERSED AND REMANDED.